UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JERMAINE QUARTERMAN,

                Petitioner,

v.                            Case No. 3:08-cv-101-J-34TEM

SECRETARY OF THE FLORIDA
DEPARTMENT OF CORRECTIONS,[1]
et al.,

                Respondents.

_____

**<u>ORDER</u>**

**<u>I. Status</u>**

Petitioner Quarterman, who is proceeding <u>pro se</u>, initiated this action by filing a Petition for Writ of Habeas Corpus (Petition) (Doc. #1) under 28 U.S.C. § 2254 on January 22, 2008, pursuant to the mailbox rule. He also filed a supporting Memorandum of Law (Doc. #1) with exhibits (Pet. Ex.). Quarterman challenges a 2004 state court (Duval County, Florida) judgment of conviction for sale or delivery of cocaine, contending that trial counsel provided ineffective assistance because he failed to: conduct an adequate pretrial investigation in that he did not obtain and view an alleged videotape from the hotel's security camera (ground one); call codefendant Darryl Charles White to

---

[1] The Secretary of the Florida Department of Corrections is the proper Respondent having custody of Petitioner.

testify at the trial (ground two); present the entrapment defense (ground three); and argue the alleged inconsistencies in the evidence as the basis for the motion for judgment of acquittal (ground five).  Further, Petitioner presents an additional ground for habeas relief: his contention that the prosecutor, in closing argument, improperly argued the Golden Rule (ground four).

Respondents have submitted a memorandum in opposition to the Petition.  See Respondents' Response to Habeas Petition (Response) (Doc. #16).[2]  On March 24, 2008, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. #5), admonishing Petitioner regarding his obligations and giving Petitioner a time frame in which to submit a reply.  Petitioner submitted a brief in reply on October 23, 2008.  See Petitioner's Reply to Respondents' Response to Habeas Petition (Reply) (Doc. #19).  This case is ripe for review.

## II. State Court Procedural History

On January 27, 2004, Quarterman was charged in Duval County, Florida, with sale or delivery of cocaine.  Resp. Ex. B at 9-10, Information.  At the conclusion of a jury trial, the jury found Quarterman guilty of sale or delivery of cocaine, as charged in the Information.  Id. at 43, Verdict; Resp. Ex. C, Transcript of the Trial Proceedings (Tr.) at 247-48.  The court adjudged Quarterman

---

[2] The Court will refer to Respondents' exhibits as "Resp. Ex."

guilty in accordance with the Verdict and sentenced him to fifteen years of imprisonment.  Resp. Ex. B at 64-69, Judgment.

On appeal, Petitioner, through counsel, filed a brief, in which he argued that the trial court erred by:  (1) failing to sustain Quarterman's Golden Rule objection; (2) refusing to permit defense counsel to argue that Detective Elegino's testimony was uncorroborated by any other witness; (3) refusing to permit defense counsel to comment specifically on the State's failure to call codefendant Darryl White as a witness; (4) overruling Quarterman's objection to testimony of the Detective's fear for his safety; and (5) refusing to permit defense counsel to refresh the memory of Detective Elegino with photographs of the hotel's video cameras. Resp. Ex. D.  The State filed an Answer Brief, <u>see</u> Resp. Ex. E, and Petitioner filed a Reply Brief, <u>see</u> Resp. Ex. F.  On May 27, 2005, the appellate court affirmed Quarterman's conviction and sentence per curiam.  <u>Quarterman v. State</u>, 902 So.2d 879 (Fla. 1st DCA 2005); Resp. Ex. G.  The mandate issued on June 14, 2005.[3]

On July 19, 2005, Petitioner filed a motion for reduction or modification of sentence pursuant to Fla. R. Crim. P. 3.800(c). Resp. Ex. H.  The court denied the motion on September 8, 2005. Resp. Ex. I.

---

[3] Online docket, <u>Jermaine Quarterman vs. State of Florida</u>, Case No. 1D04-3297, website for the First District Court of Appeal (http://www.1dca.org).

3

On December 19, 2005, Petitioner filed a pro se motion for
post conviction relief (3.850 motion) pursuant to Fla. R. Crim. P.
3.850, raising claims of ineffectiveness based upon counsel's
failure to:  request a jury instruction on possession of cocaine,
as a lesser included offense of sale or delivery of cocaine (ground
one); object to the prosecutor's statements, in closing arguments,
that Quarterman was a middleman for the sale or delivery of cocaine
(ground three); conduct an adequate pretrial investigation and
prepare an entrapment defense (ground four); object to the
introduction of photographs of the money the police used to
purchase the cocaine (ground five); conduct an adequate pretrial
investigation and file a motion to suppress the photographs of the
money the police used to purchase the crack cocaine (ground six);
call codefendant Darryl Charles White to testify at the trial
(ground six); fully set forth the grounds upon which the motion for
judgment of acquittal was based (ground seven). Resp. Ex. J at 1-
17.  Further, as ground two, Quarterman argued that the trial
court, in sentencing him as a habitual felony offender, failed to
make specific findings as required by Florida Statutes section
775.084. Id. at 5-6.  The trial court denied the 3.850 motion on
November 29, 2006. Id. at 108-17.

Petitioner appealed the denial of his 3.850 motion, see id. at
146, but did not file a brief. Resp. Ex. K.  On August 29 2007,
the appellate court affirmed the denial per curiam. See Quarterman

4

v. State, 963 So.2d 705 (Fla. 1st DCA 2007); Resp. Ex. L.   The
mandate issued on September 28, 2007.   Resp. Ex. M.

### III. One-Year Limitations Period

The Petition is timely filed within the one-year period of
limitations.   See 28 U.S.C. § 2244(d); Response at 3-4.

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a
federal court must consider whether such a hearing could enable an
applicant to prove the petition's factual allegations, which, if
true, would entitle the applicant to federal habeas relief."
Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted).
"It follows that if the record refutes the applicant's factual
allegations or otherwise precludes habeas relief, a district court
is not required to hold an evidentiary hearing."   Id.   The
pertinent facts of this case are fully developed in the record
before the Court.   Because this Court can "adequately assess
[Petitioner's] claim[s] without further factual development,"
Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert.
denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be
conducted.

### V.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of
1996, Pub.L. 104-132, 110 Stat. 1214 (AEDPA), the review "is
'greatly circumscribed and highly deferential to the state courts.'

Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)." Stewart
v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007).

> [Section] 2254(d) allows federal habeas relief
> for a claim adjudicated on the merits in state
> court only if the state court adjudication[4]
> resulted in a decision that was: "(1) . . .
> contrary to, or involved an unreasonable[5]
> application of, clearly established Federal
> law, as determined by the Supreme Court of the
> United States; or (2) . . . based on an
> unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding."   28 U.S.C. § 2254(d);
> Marquard, 429 F.3d at 1303.[6]   The phrase
> "clearly established Federal law," as used in
> § 2254(d)(1), encompasses only the holdings,
> as opposed to the dicta, of the United States
> Supreme Court as of the time of the relevant
> state court decision.   See Carey v. Musladin,
> 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d
> 482 (2006) (citing Williams v. Taylor, 529
> U.S. 362, 412, 120 S.Ct. 1495, 1523, 146
> L.Ed.2d 389 (2000)); Osborne v. Terry, 466
> F.3d 1298, 1305 (11th Cir. 2006).

Id. at 1208-09.

---

[4] For a state court's resolution of a claim to be an
adjudication on the merits, so that the state court's determination
will be entitled to deference for purposes of federal habeas corpus
review under AEDPA, all that is required is a rejection of the
claim on the merits, not an opinion that explains the state court's
rationale for such a ruling.   Wright v. Sec'y for the Dep't of
Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S.
906 (2003).

[5] "The question under AEDPA is not whether a federal court
believes the state court's determination was incorrect but whether
that determination was unreasonable - a substantially higher
threshold." Schriro, 550 U.S. at 473 (citing Williams v. Taylor,
529 U.S. 362, 410 (2000)).

[6] Marquard v. Sec'y, Dep't of Corr., 429 F.3d 1278 (11th Cir.
2005), cert. denied, 547 U.S. 1181 (2006).

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' §2254(e)(1)." Schriro, 550 U.S. at 473-74. This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

## VI. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted). The Eleventh Circuit has captured the essence of an ineffectiveness claim:

> The clearly established federal law for ineffective assistance of counsel claims was set forth by the U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a claim of ineffective assistance of counsel, first, "the defendant must show that counsel's performance was deficient . . . [which] requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687, 104 S.Ct. at 2064. Second, the defendant must show that counsel's deficient performance prejudiced him. Id. That is, "[t]he defendant must show that there is a reasonable

7

> probability that, but for counsel's
> unprofessional errors, the result of the
> proceeding would have been different. A
> reasonable probability is a probability
> sufficient to undermine confidence in the
> outcome." Id. at 694, 104 S.Ct. at 2068.

Gaskin v. Sec'y, Dep't of Corr., 494 F.3d 997, 1002 (11th Cir. 2007) (per curiam). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010) (citation omitted).

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> The question "is not whether a federal
> court believes the state court's
> determination" under the Strickland standard
> "was incorrect but whether that determination
> was unreasonable – a substantially higher
> threshold." Schriro, supra, at 473, 127 S.Ct.
> 1933. And, because the Strickland standard is
> a general standard, a state court has even
> more latitude to reasonably determine that a
> defendant has not satisfied that standard.
> See Yarborough v. Alvarado, 541 U.S. 652, 664,
> 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)
> ("[E]valuating whether a rule application was
> unreasonable requires considering the rule's
> specificity. The more general the rule, the
> more leeway courts have in reaching outcomes
> in case-by-case determinations").

Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009); see also Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to

8

a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision.").

## VII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Petitioner claims that defense counsel (Ross Scott Haine, II) was ineffective because he failed to conduct an adequate pretrial investigation in that he did not obtain and view an alleged videotape from the hotel's security camera. Memorandum of Law at 22-26. Respondents contend that the claim is procedurally barred because it was never presented to the state court. Response at 6, 14. Petitioner, however, asserts that he presented the issue to the state court in his Rule 3.850 motion, as part of ground four. Reply at 5-6. This Court concludes that Petitioner has procedurally defaulted this claim because he failed to present this specific ineffectiveness claim to the state court.

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state remedies. See Castille v. Peoples, 489 U.S. 346, 349 (1989), reh'g denied, 490 U.S. 1076 (1989); Rose v. Lundy, 455 U.S. 509 (1982). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." Turner, 339 F.3d at 1281 (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999)). "This exhaustion doctrine 'is designed to give the state courts a full and fair

opportunity to resolve federal constitutional claims before those claims are presented to the federal courts.'" Turner, 339 F.3d at 1281 (quoting O'Sullivan, 526 U.S. at 845).

As Petitioner did not present this ineffectiveness claim to the state court, he has failed to satisfy his exhaustion obligation.  Additionally, the Court finds that it would be futile to dismiss this case to give Petitioner the opportunity to exhaust this claim for relief because the ineffective assistance of counsel claim could have and should have been raised in Petitioner's 3.850 motion.  Accordingly, the claim has been procedurally defaulted.

"A federal court may still address the merits of a procedurally defaulted claim if the petitioner can show cause for the default and actual prejudice resulting from the alleged constitutional violation." Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010) (citation omitted), petition for cert. filed, 79 U.S.L.W. 3128 (U.S. Aug. 25, 2010) (No. 10-288).  In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if he can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result.  The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and
> prejudice, there remains yet another avenue
> for him to receive consideration on the merits
> of his procedurally defaulted claim.  "[I]n an
> extraordinary case, where a constitutional
> violation has probably resulted in the

10

> conviction of one who is actually innocent, a
> federal habeas court may grant the writ even
> in the absence of a showing of cause for the
> procedural default." <u>Carrier</u>, 477 U.S. at
> 496, 106 S.Ct. at 2649.[7]  "This exception is
> exceedingly narrow in scope," however, and
> requires proof of actual innocence, not just
> legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d
> 1156, 1171 (11th Cir. 2001).

<u>Id</u>.  "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)), <u>cert</u>. <u>denied</u>, 535 U.S. 926 (2002).  Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderson v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324).  With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

Here, Petitioner has not shown either cause excusing the default or actual prejudice resulting from the bar.  Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.  Thus, the Court will not address the merits of the claim.

---

[7] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

## B. Ground Two

As ground two, Petitioner claims that defense counsel was ineffective because he failed to call codefendant Darryl Charles White to testify at the trial.  Memorandum of Law at 27-31.  As acknowledged by the parties, Petitioner raised this claim in his 3.850 motion.  After identifying the two-prong <u>Strickland</u> ineffectiveness test as the controlling law, the trial court denied the 3.850 motion with respect to this claim, stating in pertinent part:

> In ground six subclaim two, the Defendant claims that counsel failed to call the co-defendant, Darryl Charles White, to testify at trial. The Defendant claims that Mr. White would have testified that, "he [Mr. White] was the actual seller, and that the crack cocaine was his, that defendant sat on the stairs. There was no hand to hand transaction made between Defendant and Detective Elegino." (Defendant's Motion page 12.)[8]  In actuality, Mr White gave the following sworn statement to the State:
>
> > State: Now, regarding this incident, what happened around 8:00 o'clock that night?
> >
> > Mr. White: Well I just walked out of my hotel room and went to the store. When I was coming from across the street from the store my co-defendant Jermaine came to me and told me some people want $60 worth of crack. So I went over there and gave it to him cause I didn't trust them.

---

[8] Resp. Ex. J, Motion for Post Conviction Relief, at 13.

12

State: You didn't trust the people that were going to buy cocaine from you?

Mr. White: Yeah.

State: Did you believe them to be police?

Mr. White: Yes.

State: And when you say Jermaine, is that Jermaine Quarterman?

Mr. White: Yes.

. . . .

State: So Quarterman didn't actually have any cocaine on him when he made contact with these people that later turned out to be police officers at first?

Mr. White: No, he did not, not to my knowledge.

State: Okay. And he asked you to give him the cocaine so he could sell it?

Mr. White: Yes.

State: His understanding he was going to sell it for $60 and you were going to get the $60?

Mr. White: Yes.

State: What were you going to give him as compensation for doing this?

Mr. White: He just asked for a few dollars.

(Exhibit "D.")[9] Mr. White's sworn statement is in direct conflict with the statement the Defendant claims Mr. White would have given had he been called as a witness. Therefore, the Defendant has failed to show error on the part of counsel for not calling Mr. White as a witness at trial. <u>Strickland</u>, 466 U.S. 668. Accordingly, ground six subclaim two is denied.

Resp. Ex. J at 113-15. On Petitioner's appeal, the appellate court affirmed the denial per curiam.

This ineffectiveness claim was rejected on the merits by the state trial and appellate courts. As there are qualifying state court decisions, this claim will be addressed applying the deferential standard for federal court review of state court adjudications required by AEDPA. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were they based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Petitioner is not entitled to relief on the basis of this claim.

Even assuming that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is without merit. In evaluating the performance prong of the

---

[9] Resp. Ex. J, attached exhibit D, Sworn Statement of Darryl Charles White, dated April 8, 2004, at 139-41.

<u>Strickland</u> ineffectiveness inquiry, the Court recognizes that there is a strong presumption in favor of competence.  The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  <u>Strickland</u>, 466 U.S. at 690.  "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'"  <u>Rompilla v. Beard</u>, 545 U.S. 374, 381 (2005) (citations omitted).  Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose.  <u>United States v. Freixas</u>, 332 F.3d 1314, 1319-20 (11th Cir. 2003).

Defense counsel, in response to Quarterman's complaint submitted to the Florida Bar after the trial, addressed this specific issue as follows:

> I was appointed to represent Mr. Quarterman on or about January 21, 2004.  Mr. Quarterman was charged with sale or delivery of crack cocaine in Duval County, Florida. The State classified him as a Habitual Offender, because he had previously been convicted of sale or delivery of cocaine in 1997 and possession of cocaine in 2003.  His exposure was up to 30 years incarceration in Florida State Prison. The State's offer was 12 years incarceration. Prior to trial, I advised Mr. Quarterman to authorize me to convey a counter-offer of 5 years incarceration. Against my advice, Mr. Quarterman declined and elected to proceed to trial.  On June 09, 2004, Mr. Quarterman was convicted after [a] jury trial. On June 29, 2004, he was sentenced to 15 years incarceration.

The drug transaction in this case was recorded on audio tape. According to the undercover detectives with the Jacksonville Sheriff's Office, they contacted Mr. Quarterman in front of a motel and asked him for "sixty hard" (referring to $60 worth of crack cocaine). He instructed them to park beside the motel, and he left their sight. He then returned with a gentleman named Darryl White. Mr. White initially had the cocaine in his possession. According to the detectives, Mr. White was reluctant to complete the exchange, but Mr. Quarterman wanted it to be accomplished. Mr. Quarterman obtained the cocaine from Mr. White, and proceeded to walk inside the motel to a breezeway with Mr. White and the undercover detective. The detective told them that he did not want to go further into the motel, and additionally told Mr. Quarterman that he could leave the cocaine on the stairs inside the breezeway. Mr. Quarterman left the cocaine on the stairs, and the detective put $60.00, which the Jacksonville Sheriff's Office had marked for later identification, on the stairs. Mr. White picked up the marked money, and kept all of it. He then gave Mr. Quarterman some other money of an unidentified amount that he had already had in his possession, as payment for brokering the transaction. Uniformed officers then rushed into the motel, and Mr. Quarterman and Mr. White were immediately arrested.

Mr. White, who pleaded guilty and cooperated with the State in Mr. Quarterman's case, confirmed the version of events described by the undercover officers. I took Mr. White's deposition on May 05, 2004, prior to trial (see attached transcript). In his deposition testimony, Mr. White confirmed that Mr. Quarterman did, in fact, actively participate in the drug transaction. Mr. White stated that Mr. Quarterman approached him and advised that somebody wanted $60 worth of crack cocaine. Mr. White additionally stated that they met the undercover officers outside of the motel, and Mr. White suspected that they were the police, so he did not want

16

to complete the transaction.  Mr. Quarterman
then offered to complete the deal himself, so
Mr. White gave him the crack cocaine to
deliver to the undercover officer. The three
of them then walked into the breezeway of the
motel, whereupon Mr. White then observed the
officer pick up the cocaine and place $60.00
on the stairs. Mr. White confirmed that he
picked up the marked $60.00, and that Mr.
Quarterman asked for compensation for his part
in the transaction.  Mr. White further
confirmed that he kept the marked money, and
gave Mr. Quarterman approximately $10.00 that
he already had in his possession.

I provided a copy of Mr. White's
deposition transcript to Mr. Quarterman prior
to trial, so he would know exactly what Mr.
White's testimony would be. On or about June
01, 2004, I reviewed Mr. White's entire
deposition transcript with Mr. Quarterman, in
private at the Duval County Jail. At that time
and on prior occasions, I explained to Mr.
Quarterman that the State need not present
every single witness to the jury at trial. I
further explained that the State might
determine that the detective's testimony was
sufficient to convict him, and that the State
may decide not to call Mr. White to testify.

The State elected not to call Mr. White
to testify at trial, and relied upon the
undercover detective's testimony. For reasons
known only to Mr. Quarterman, he believed that
Mr. White's testimony would help convince a
jury to acquit him. Prior to the trial, he
asked me whether I would call Mr. White to
testify, fully aware that Mr. White would
incriminate him in the offense. He told me
that other inmates at the Duval County Jail,
whom he considered to be legal scholars,
advised him that Mr. White's testimony would
somehow benefit him.  He could not, however,
describe what advantage Mr. White would
provide the defense. Based on Mr. White's
deposition testimony, which further confirmed
that Mr. Quarterman had participated in an
illegal drug transaction, I elected not to

17

> call him to testify at the trial. In my
> judgment, there was absolutely no justifiable
> reason to call a witness to testify that Mr.
> Quarterman had in fact committed the acts that
> gave rise to his criminal prosecution. To do
> so would have been blatantly ineffective, as
> it would have assisted the State in obtaining
> Mr. Quarterman's conviction. I repeatedly
> explained this in detail to Mr. Quarterman,
> before, during and after the trial.

Pet. Ex., Letter to the Florida Bar from Ross S. Haine, II, dated August 3, 2004.

At the trial, Detective Elegino testified as follows about the January 3, 2004 undercover operation, in which he and Detective Clement were seeking to buy illegal drugs in north Jacksonville. Tr. at 43. Detective Elegino wore an audio recording device during the transaction. Id. at 54, 63. The undercover officers approached Quarterman and asked him for "60 hard," which is street terminology for $60.00 worth of crack cocaine. Id. at 45-46. According to Elegino, Quarterman told them to wait there, and then Elegino lost sight of Quarterman for approximately a minute. Id. at 48, 74-75, 76. Quarterman returned with another individual, Darryl White. Id. at 49, 76. Since White was "leery" of completing the deal with Elegino, White and Quarterman walked about ten feet away from Elegino. Id. at 51, 79. As they walked away, Elegino saw White hand Quarterman "something," id. at 52, 77, and then they turned around and walked towards Elegino; Quarterman told Elegino to follow him. Id. at 52. Elegino followed White and Quarterman into a stairwell, but did not want to follow them up the

stairs due to concern for his own safety.  Id. at 54.  When Elegino told them to place the drugs on the stairs, id. at 55, 56, Quarterman set "two pieces of crack cocaine on the step."  Id. at 55.  Elegino picked up the crack cocaine and then put $60.00 on the step.  Id. at 55, 61.  After White "bent over to pick up the $60," he pulled some money out of his back pocket to pay Quarterman.  Id. at 61.

With Darryl White's deposition testimony and his April 8, 2004 sworn statement implicating Quarterman in the drug transaction, counsel's decision not to call White as a witness was not deficient performance.  Defense counsel engaged in discovery and was fully informed as to White's participation in the transaction.  With White's account being consistent with Detective Elegino's version of the events, there was no justifiable reason to call White who had implicated Quarterman and probably would have testified that Mr. Quarterman had in fact committed the acts that gave rise to his criminal prosecution.  Thus, Petitioner has failed to establish that counsel's failure to call codefendant White was deficient performance.

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had called Mr. White as he requested.  Accordingly, Petitioner's ineffectiveness claim is

without merit since he has neither shown deficient performance nor resulting prejudice.  <u>See</u> Response at 14-20.

### C. Ground Three

As ground three, Petitioner claims that defense counsel was ineffective because he failed to present an entrapment defense. Quarterman argues that the government induced him to commit the sale or delivery of cocaine and that he was not predisposed to commit the sale, and therefore, he was entitled to a jury instruction on the entrapment defense.  Memorandum of Law at 31-33. He raised this claim in his 3.850 motion.  Ultimately, the trial court identified the <u>Strickland</u> ineffectiveness test as the controlling law and denied the 3.850 motion with respect to this issue, stating in pertinent part:

> In claim two of ground four, the Defendant claims that counsel rendered ineffective assistance by not raising an entrapment defense.  The Defendant alleges that he was not predisposed to commit the crime and that he was induced or encouraged into committing the offense.  When dealing with subjective entrapment:
>
> An accused has the initial burden of establishing by the preponderance of the evidence that he was induced to commit the crime. The accused must demonstrate that an agent of the government induced him or her to commit the crime. If the accused establishes inducement by the government then the accused must demonstrate a lack of predisposition to commit the crime. If the accused produces evidence establishing lack of predisposition, the state is

given the opportunity to rebut the
evidence beyond a reasonable doubt.

Davis v. State, 937 So.2d 300, 303 (Fla. 4th
DCA 2006). The Defendant claims that he was
induced to sell crack cocaine by the actions
of Detective Elegino. Inducement is defined as
"[A]ny      government      conduct      creating      a
substantial risk that an otherwise law-abiding
citizen  will  commit  an  offense,  including
persuasion,      fraudulent      representations,
threats,      coercive      tactics,      harassment,
promises of reward, or pleas based on need,
sympathy or friendship." Farley v. State, 848
So.  2d  393,  395  (Fla.  4th  DCA  2003).  This
Court  finds  that  the  Defendant's  claim
regarding  the  actions  of  Detective  Elegino
does  not  fall  withing  [sic]  the  accepted
definition   of   inducement.   However,   even
assuming  arguendo  that  the  Defendant's  claim
does  fall  within  the  accepted  definition  of
inducement,   the   Defendant   has   failed   to
establish  the  second  prong  of  the  entrapment
defense as stated by the Fourth District Court
of Appeal:

> An   agent   deployed   to   stop   the
> traffic in illegal drugs may offer
> the   opportunity   to   buy   or   sell
> drugs,   and,   if   the   offer   is
> accepted, make an arrest on the spot
> or  later.   In  such  a  typical  case
> ...   where  the  defendant  is  simply
> provided   with   the   opportunity   to
> commit   a   crime,   the   entrapment
> defense is of little use because the
> ready  commission  of  the  criminal  act
> amply  demonstrates  the  defendant's
> predisposition.

State v. Brown, 767 So.2d 565 (Fla. 4th [DCA]
2000). The Court notes that the Defendant has
a  prior  conviction  for  Sale  or  Delivery  of
Cocaine.[10] (Exhibit "C.") The State responded

---

[10] See Resp. Ex. J, attached exhibit C; Resp. Ex. B at 13
(Notice   of   Intent   to   Classify   Defendant   as   a   Habitual   Felony

> to the Defendant's Motion and asserted they
> would have presented the otherwise
> inadmissible evidence of the Defendant's prior
> conviction if the defense of entrapment had
> been presented. Accordingly, the Defendant
> has not established that he was not
> predisposed to commit the criminal act.
> Therefore, the entrapment defense would have
> failed due to the Defendant's predisposition
> to commit the crime. Accordingly, the
> Defendant cannot establish prejudice to his
> case. <u>Strickland</u>.

Resp. Ex. J at 111-12.  Upon Petitioner's appeal, the appellate court affirmed the denial per curiam.

This ineffectiveness claim was rejected on the merits by the state trial and appellate courts.  Thus, as there are qualifying state court decisions, this claim will be addressed applying the deferential standard for federal court review of state court adjudications.  Upon review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to relief on the basis of this claim.

---

Offender), 49-63; Pet. Ex., Haine's letter, at 1 (referrring to Quarterman's prior felony conviction for sale or delivery of cocaine).

Moreover, even assuming that the state courts' adjudications of this claim are not entitled to deference, Petitioner's claim is without merit.   Given the facts of the January 3, 2004 drug transaction, there is nothing to suggest that the undercover officers induced Quarterman into a drug sale he otherwise would not have participated in that day.   See Black v. State, 41 So.3d 423, 425 (Fla. 1st DCA 2010) (stating counsel was not ineffective for failing to pursue an entrapment defense when the defendant did not allege that the confidential police informant induced him into a drug sale he otherwise would not have participated in).   In addition, there was available evidence to show that Quarterman was predisposed to commit the crime of sale or delivery of cocaine. And, as Elegino testified, when he asked Quarterman about "60 hard," Quarterman directed him to park and wait as Quarterman disappeared in search of the cocaine to sell.   See Tr. at 46-57. The facts did not support an entrapment defense. Thus, Petitioner has failed to establish that counsel's failure to raise the entrapment defense was deficient performance.

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice.   Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged he should have provided. Accordingly, Petitioner's ineffectiveness claim is without merit

since he has neither shown deficient performance nor resulting prejudice.  See Response at 24-25.

### D. Ground Four

As ground four, Petitioner claims that the prosecutor, in closing argument, improperly argued the Golden Rule.[11]  In support of this allegation, Quarterman identifies the following portions of the trial:

> [PROSECUTOR]: **But if you take it to the extreme that every time the police are in the community trying to prevent crime, trying to fight crime, that unless they do it with state-of-the-art technology, then I would suggest that any person within Jacksonville that wakes up and finds their car stolen, if they don't have a videotape of the crime that occurs, then I guess they shouldn't bother to call the police.**
>
> **I guess the next time a person comes home and has --**
>
> [DEFENSE COUNSEL]: Objection, Your Honor. Golden rule.
>
> THE COURT: I'll overrule.  I'll overrule the objection.  Please proceed.
>
> [PROSECUTOR]: **Under the defense theory, the next time that someone comes home and finds their home burglarized, if they don't have digital photographs, if they don't have state-of-the-art technology that was**

---

[11] See Doorbal v. State, 837 So.2d 940, 957 (Fla. 2003) ("These statements are erroneous and needlessly violated the prohibition against 'Golden Rule' arguments, because they asked jurors to place themselves in the position of the victim."), cert. denied, 539 U.S. 962 (2003).

**videotaping around their home, then I guess there's no point in calling the police.**

**That is the logic and the common sense that you're being asked to use.**

[DEFENSE COUNSEL]: Objection, Your Honor. We would renew and ask for a sidebar.

THE COURT: Okay.

Tr. at 204-05 (emphasis added).   Petitioner concludes that the prosecutor's comments were akin to a Golden Rule violation because the comments "suggested the jurors were themselves direct victims of the crimes."  Memorandum of Law at 33.

On direct appeal, Petitioner argued that the trial court erred in failing to sustain his Golden Rule objection, see Resp. Ex. D at 15-19; the State filed an Answer Brief, see Resp. Ex. E at 6-10; and the appellate court affirmed Petitioner's conviction and sentence per curiam without a written opinion concerning this issue, see Quarterman, 902 So.2d 879.   To the extent that Petitioner Quarterman is raising, in ground four, the same claim he presented on direct appeal, such a claim presents an issue of purely state law that is not cognizable on federal habeas review. See Response at 6.

Even assuming Petitioner raised this as a federal constitutional claim on direct appeal, the State, in its appellate brief, addressed the claim on the merits.   Thus, the appellate court may have affirmed Petitioner's conviction based on the State's argument on the merits.   If the appellate court addressed

the merits, Petitioner would not be entitled to relief because the state court's adjudication of this claim is entitled to deference under AEDPA.[12]   After a thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Additionally, even assuming that the state court's adjudication of this claim is not entitled to deference, Petitioner's claim is without merit.  Attorneys are permitted wide latitude in their closing arguments, and the record reflects that the trial judge instructed the jury that the attorneys were not witnesses in the case, and therefore their statements and arguments were not evidence.  Tr. at 15, 173; see Hammond v. Hall, 586 F.3d 1289, 1334 (11th Cir. 2009); Brown v. Jones, 255 F.3d 1273, 1280 (11th Cir. 2001) (citations omitted) (stating that "jurors are presumed to follow the court's instructions."), cert. denied, 534 U.S. 1085 (2002).

Here, Petitioner has neither shown that the prosecutor's remarks were improper nor that the remarks prejudicially affected Petitioner's substantial rights.   See Spencer v. Sec'y, Dep't of

---

[12] See Wright, 278 F.3d at 1255.

<u>Corr.</u>, 609 F.3d 1170, 1182 (11th Cir. 2010) (setting forth the two-pronged test for prosecutorial misconduct).   The reversal of a conviction is warranted only when improper comments by a prosecutor have "'so infected the trial with unfairness as to make the resulting conviction [or sentence] a denial of due process.' <u>Darden v. Wainwright</u>, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974))." <u>Parker v. Head</u>, 244 F.3d 831, 838 (11th Cir. 2001).   This Court has thoroughly reviewed the record and is convinced that the comments did not result in a due process violation.   Thus, Petitioner's claim is without merit.

### E. Ground Five

As ground five, Petitioner claims that defense counsel was ineffective because he failed to argue the alleged inconsistencies in the evidence as the basis for the motion for judgment of acquittal.   Petitioner raised this claim in his 3.850 motion. Ultimately, the trial court identified the <u>Strickland</u> ineffectiveness test as the controlling law and denied the 3.850 motion with respect to this issue, stating in pertinent part:

> In ground seven, the Defendant claims that counsel rendered ineffective assistance by making an improper Motion for Judgment of Acquittal. The Defendant claims that counsel made a boilerplate motion and did not fully set [] forth the grounds on which the Motion for Judgment of Acquittal was based. The Florida Supreme Court has said the following in reference to motions for judgment of acquittal:

[a] defendant, in moving for a judgment of acquittal, admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence. The courts should not grant a motion for judgment of acquittal unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law. Where there is room for a difference of opinion between reasonable men as to the proof or facts from which an ultimate fact is sought to be established, or where there is room for such differences as to the inferences which might be drawn from conceded facts, the Court should submit the case to the jury for their finding, as it is their conclusion, in such cases, that should prevail and not primarily the views of the judge. The credibility and probative force of conflicting testimony should not be determined on a motion for judgment of acquittal.

Lynch v. State, 293 So.2d 44 (Fla. 1974).

Applying the above reasoning to the facts of the present case, the Defendant's claim that counsel failed to properly argue his Motion for Judgment of Acquittal is without merit. There is not a reasonable probability that, had counsel argued as the Defendant suggests, the Motion for Judgment of Acquittal would have been granted and the Defendant would have been acquitted. "Although in hindsight one can speculate that a different argument may have been more effective, counsel's argument does not fall to the level of deficient performance simply because it ultimately failed." Ferguson v. State, 593

> So. 2d 508 (Fla. 1992). Accordingly, ground
> seven is denied.

Resp. Ex. J at 115-16.   The appellate court affirmed the trial court's denial per curiam.

This ineffectiveness claim was rejected on the merits by the state trial and appellate courts.   Thus, as there are qualifying state court decisions, this claim will be addressed applying the deferential standard for federal court review of state court adjudications.   Following an extensive review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.   Thus, Petitioner is not entitled to relief on the basis of this ineffectiveness claim.

Additionally, even assuming that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is without merit.   The record reflects that defense counsel moved for a judgment of acquittal, arguing that the State "failed to prove that Mr. Quarterman was a participant in this drug transaction and the substance involved, which would be the second element, is in fact cocaine."   Tr. at 162.   Based on the evidence presented, the trial judge denied the

motion, concluding: "I think the State has presented a sufficient case to make it a jury question." Id. at 165.   Counsel's failure to argue the alleged inconsistencies in the evidence as a basis for the motion for judgment of acquittal was not deficient performance. See Sampson v. State, 832 So.2d 251, 254 (Fla. 5th DCA 2002) ("[I]nconsistencies in the evidence does not constitute a legally sufficient basis to support a motion for judgment of acquittal. The defense must accept all competent evidence adduced against the defendant, and be able to demonstrate the state failed to prove one or more essential elements of the criminal charge with competent substantial evidence.").

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice.   Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged he should have provided. Accordingly, Petitioner's ineffectiveness claim is without merit since he has neither shown deficient performance nor resulting prejudice.   See Response at 29.

## VIII. Conclusion

Upon consideration of the foregoing, the undersigned finds that "[u]nder the doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard, see Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d

30

1 (2003) (per curiam), [Petitioner's] ineffective-assistance claim[s] fail[]." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009). The remainder of Petitioner's claims are either procedurally barred or without merit. Accordingly, for the above-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

## IX. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Petitioner seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See

Slack, 529 U.S. at 484.  However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.   The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.   If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

4.   The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 28th day of October, 2010.


MARCIA MORALES HOWARD
United States District Judge


sc 10/28
c:
Jermaine Quarterman
Ass't Attorney General (Hill)